IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

DAVID ALLEN and ASHLEE ALLEN,
Individually and as Guardians ad Litem
for XAVIER ALLEN, an infant,

Plaintiffs,

v.

Case No. CV 07 2661

ROBERT'S AMERICAN GOURMET
FOOD, INC., a domestic corporation;

COMPLAINT
& JURY DEMAND

Defendant.   GARAUFIS, J.

BOYLE, M.J.

COME NOW the plaintiffs DAVID ALLEN and ASHLEE ALLEN, individually and as Guardians ad Litem, by and through their attorneys of record, MARLER CLARK, LLP, PS and UNDERBERG & KESSLER LLP, and allege as follows:

**PARTIES**

1.1   The plaintiffs, David Allen, Ashlee Allen, and Xavier Allen, are residents of Valparaiso, Indiana. The plaintiffs are not residents of the state of New York.

1.2   David Allen and Ashlee Allen are the natural parents of the infant child Xavier Allen ("Infant Plaintiff"), and are persons of suitable age and discretion to act as Guardians ad Litem in this matter.

1.3   The defendant Robert's American Gourmet Foods, Inc, ("Robert's") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Sea Cliff, Nassau County, New York, which resides in the Eastern District of New York.

1

## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the State of New York such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2     Venue in the United States District Court for the Eastern District of New York is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

### Salmonella Infections

3.1     *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with human or animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. An infected food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

3.2     Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 24 to 72 hours. As few as 15-20 cells of *Salmonella* bacteria can cause salmonellosis or a more serious typhoid-like fever. Variables such as the health and age of the host, and virulence differences among the serotypes, affect the nature

and extent of the illness. Infants, elderly, hospitalized, and immune suppressed persons are the populations that are the most susceptible to disease, and suffer the most severe symptoms.

3.3   The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, abdominal cramping, and bloody diarrhea and mucous over a period of days. There is no real cure for *Salmonella* infection, except treatment of the symptoms. Persons with severe diarrhea may require rehydration, often with intravenous fluids.

3.4   Persons with diarrhea usually recover completely, although it may be several months before their bowel habits are entirely normal. A small number of persons who are infected with *Salmonella* will go on to develop pains in their joints, irritation of the eyes, and painful urination. This is called Reiter's syndrome and/or reactive arthritis. It can last for months or years, and can lead to chronic arthritis, which is difficult to treat. Antibiotic treatment does not make a difference in whether or not the person later develops arthritis.

### "Veggie Booty" Salmonella Recall

3.5   On June 28, 2007, the FDA announced the voluntary recall of a snack food "Veggie Booty" sold under the brand name Robert's Gourmet Foods, due to contamination with *Salmonella* Wandsworth. The FDA advised customers not to eat the product. The FDA reported 52 illnesses in 17 states associated with the recalled product.

3.6   Dried snack foods have previously been associated with Salmonella. In 1998, an outbreak of Salmonella involving 209 people in 11 states was linked to Malt-o-Meal.

### Xavier Allen's Injuries

3.7   The Allens purchased a bag of Robert's Veggie Booty during the week of May 20, 2007. Xavier Allen consumed the product during the week of May 20, 2007.

3.8   Xavier Allen first showed signs of illness on May 23, 2007, including severe, bloody diarrhea.

3.9     Xavier Allen was treated in the emergency room on May 26, 2007. A stool sample was taken that later cultured positive for *Salmonella* Wandsworth.

3.10    Xavier Allen received additional medical treatment through multiple appointments on the subsequent days.

3.11    Xavier Allen remains symptomatic at this time, and under medical care for his Salmonella infection.

## CAUSES OF ACTION

### Strict Liability—Count I

4.1 Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

4.2     At all times relevant hereto, the defendant was a manufacturer and seller of the adulterated food product that is the subject of the action.

4.3     The adulterated food product that the defendant manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

4.4     The adulterated food product that the defendant manufactured, distributed, and/or sold was delivered to the plaintiffs without any change in its defective condition. The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the Infant Plaintiff.

4.5     The defendant owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendant breached this duty.

4.6    The defendant owed a duty of care to the plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached this duty.

4.7    As a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, distributed, and/or sold, plaintiffs suffered injury and damages in an amount to be determined at trial, expected to be in excess of $75,000.00.

### Breach of Warranty—Count II

4.8    Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

4.9    The defendant is liable to the plaintiff for breaching express and implied warranties that it made regarding the adulterated product that the Allens purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, the defendant expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

4.10   Plaintiffs allege that the *Salmonella*-contaminated food that the defendant sold to plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.11   Plaintiffs allege that the *Salmonella*-contaminated food that the defendant sold to plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.12   As a direct and proximate cause of the defendant's breach of warranties, as set

forth above, the plaintiff sustained injuries and damages in an amount to be determined at trial, expected to be in excess of $75,000.00.

### Negligence—Count III

4.13   Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

4.14   The defendant owed to the plaintiffs a duty to use reasonable care in the manufacture, distribution, and sale of their food product, which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant breached this duty.

4.15   The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.16   The defendant had a duty to properly supervise, train, and monitor its employees, and to ensure its employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but the defendant failed to do so and was therefore negligent.

4.17   The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendant failed to do so and was therefore negligent.

4.18 As a direct and proximate result of the defendant's acts and omissions of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial, expected to be in excess of $75,000.00.

### Negligence Per Se—Count IV

4.19 Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

4.20 The defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*).

4.21 The defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

4.18 As a direct and proximate result of conduct by the defendant that was negligent *per se*, the plaintiffs sustained injury and damages in an amount to be determined at trial, expected to be in excess of $75,000.00.

### DAMAGES

5.1 The plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical

7

expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

6.1 The plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for judgment against the defendant as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiffs as a result of the defendant's conduct;

B. Awarding plaintiffs their reasonable attorneys fees and costs, to the fullest extent allowed by law; and

C. Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: July 2, 2007.

MARLER CLARK, LLP, PS

William D. Marler, Esq. WSBA #17233
Attorneys for Plaintiffs
6600 Bank of America Tower
701 Fifth Avenue
Seattle, WA  98104
Telephone: (206) 346-1888
Attorneys for Plaintiff

UNDERBERG & KESSLER LLP

Paul V. Nunes, Esq.  PN2853
Attorneys for Plaintiffs (co-counsel)
300 Bausch & Lomb Place
Rochester, New York  14604
(585) 258-2800